ROBERT P. COSTLOW et al., Respondents, *v.* FREDERICK CUSIMANO, JR., et al., Appellants.

Fourth Department, May 14, 1970.

*Gerace & Lodestro* (*Joseph Gerace* of counsel), for Frederick Cusimano, Jr., appellant.

*Johnson, Peterson, Tener & Anderson* (*William C. Arrison* and *Bruce K. Carpenter* of counsel), for Trend Radio, Inc., appellant.

*Harris, Beach & Wilcox* (*Thomas M. Hampson* of counsel), for respondents.

*Per Curiam.* Defendants appeal from an order which denied their motions to dismiss the complaint for failure to state a cause of action.

Because of the procedural context of the case, the facts alleged in the complaint must be taken as established. Plaintiffs, residents of Jamestown, were the parents of two children. On June 2, 1964, these children, Robert age three, and Marion age two, died by suffocation when they trapped themselves in a refrigerator located at the family's residence. Defendant Cusimano, employed by defendant Trend Radio, Inc., arrived at the scene and photographed the premises and the deceased children. Cusimano then took steps to write an article illustrated by these photographs. He then showed the photographs to " many persons " in the State of New York and the Commonwealth of Pennsylvania, apparently in an attempt to secure a publisher for his article. The complaint and briefs suggest, but do no explicitly state, that the article was published and distributed within New York and Pennsylvania. Plaintiffs allege that Cusimano acted without their consent, with the intent to exploit the plaintiffs for financial profit and to enhance his reputation as a photographer, maliciously with knowledge of the existing grief of the plaintiffs, and intentionally to hold the plaintiffs up to public shame and to cause mental anguish and emotional shock. Finally, it is alleged that by reason of the publication and exhibition of said photographs plaintiffs received uncomplimentary comments from persons to whom the publications were made; became sick, nervous, unable to sleep, unable to eat, suffered severe mental anguish and emotional disturbance; and plaintiff Geraldine E. Costlow was required to obtain medical and psychiatric care at a cost of upwards of $250.

Respondents admit that Cusimano's publication identified the plaintiffs only by the context of the description of the family's tragedy; the names were not used. It is alleged that the use of pictures of the plaintiffs' children with the description of the tragedy identified the plaintiffs.

Plaintiffs seek to maintain their action on four theories: (1) invasion of their right of privacy secured by sections 50 and 51 of the Civil Rights Law; (2) intentional infliction of mental distress; (3) prima facie tort; and (4) trespass.

The cause of action based on the statutory right to privacy (Civil Rights Law, § 51) is insufficient because the subject matter is within the area of legitimate public interest and publication and exhibition of the story and photographs of the incident accurately portrayed the events. The applicable principles of law are based upon the decisions in *Time, Inc.* v. *Hill* (385 U. S. 374); *Spahn* v. *Julian Messner, Inc.* (21 N Y 2d 124); *Matter of Hemingway* v. *Random House* (23 N Y 2d 341). In commenting upon the *Hill* and *Spahn* cases the Court of Appeals has said in *Matter of Hemingway* v. *Random House* (*supra*, p. 352): "Both of these cases established that, in the light of constitutional guarantees of free speech, section 51 may not be applied to afford recovery to a public figure or in matters of the public interest—to quote from *Hill* (385 U. S., at p. 388)—'in the absence of proof that the defendant published the [item] with knowledge of its falsity or in reckless disregard of the truth.'"

An article about two children suffocating by trapping themselves within a refrigerator, while necessarily unpleasant to the children's parents, is a matter of legitimate public concern. The governing law leaves unspecified the proper scope of public concern, and it has been argued that the definition is necessarily circular because an action for invasion of privacy arises only after some publication has made the plaintiff a subject of public concern. The prevailing opinion of the court in *Time, Inc.* v. *Hill* (*supra*) found newsworthy an article about the genesis of a Broadway play. The episode around which the play was written, three escaped convicts holding a family captive for 19 hours, had been the news of the day at the time of its occurrence. Three years later the play and an article in *Life* magazine thrust the Hill family back into the news. In the instant case, the underlying tragedy is a legitimate subject of public concern because the death of two children becomes a matter of public record and the cause of these deaths, a trap created by a common household appliance, should be brought to the attention of the public so that similar deaths will not occur. Accordingly, while the proper limits of newsworthy matters must of necessity be undefined, the article in the instant case falls within these limits.

The manner in which the article develops its topic is not relevant to whether the article is protected by constitutional

guarantees of free speech. Mr. Justice HARLAN, concurring in part and dissenting in part in the *Hill* case, proposed a standard of reasonable investigation and fair comment (*Time, Inc.* v. *Hill, supra*, p. 409). The court implicitly rejected his standard, perhaps because it would force the courts to act as wide-ranging critics of the manner of exposition used by the press. Consequently, there is no merit in respondents' contention that the article written by Cusimano is not newsworthy because of the sensational manner in which it treats its subject matter. Nor does it matter that the article was not prepared for publication by a regular newspaper, since any such rule would unduly restrict the channels of free expression of matters of public concern. In fact, once the subject matter is found suitable for public concern, the constitutional guarantees attach, and liability may be premised only on falsification resulting from actual malice.

The complaint contains no allegation that the publication falsely represented the actual occurrence. Therefore, on the basis of the doctrine announced in the *Hill* case, there can be no cause of action based on the theory that the publication of an article about the suffocation of the Costlow children invaded the statutory right of privacy of the Costlows. Nor can there be a cause of action for damages caused by Cusimano's exhibition of his article or photographs in an attempt to secure a publisher. The Court of Appeals in *Matter of Hemingway* v. *Random House* (23 N Y 2d 341, *supra*) after holding that an action under section 51 of the Civil Rights Law could not be based on the publication of a book of memoirs, in the absence of a showing of falsity and actual malice, stated (p. 353): "The same reasons which support the author's freedom to write and publish books require a similar freedom for their circulation, before publication, for comment by reviewers." The principle there stated, the protection of the necessary steps in the process of publishing the author's work, precludes liability for the exhibition of Cusimano's photographs, prior to their actual publication, in the normal course of publishing his work.

The second and fourth causes of action may be treated together since both allege intentional infliction of harm to a legally recognized interest, without excuse or justification. Both causes are insufficient for the same reasons: (1) the sole motivation for the damaging acts was not a malicious intent to injure the plaintiffs; and (2) the constitutionally protected right to publish articles on subjects within the area of public concern affords a clear legal justification for Cusimano's acts.

The first principle was recognized by the court in *Benton* v. *Kennedy-Van Saun Mfg. & Eng. Corp.* (2 A D 2d 27, 28–29): "Under no circumstances, upon such facts as he has alleged, will plaintiff be able to plead a sufficient cause of action based on 'prima facie' tort. 'The remedy [of prima facie tort] is invoked when the intention to harm, as distinguished from the intention merely to commit the act, is present, has motivated the action, and has caused the injury to plaintiff, all without excuse or justification' [citations omitted]. While harm to plaintiff of course followed the successful consummation of defendant's scheme, it was caused primarily by defendant's thrust for profits. The complaint alleges that defendant acted 'in order for its own benefit to acquire said contracts and profits therefrom.'"

It was recently reaffirmed in *Squire Records* v. *Vanguard Recording Soc.* (25 A D 2d 190, 191–192, affd. 19 N Y 2d 797) where the court stated: "Although we believe that the first cause of action is sufficiently stated, we conclude that it does not sound in prima facie tort. Under that doctrine, recovery has been limited to those instances where the sole motivation for the damaging acts has been a malicious intention to injure the plaintiff. Where there are other motives, e.g., profit, self-interest, business advantage, there is no recovery under tort prima facie."

Here, the complaint alleges that Cusimano acted maliciously and intentionally to hold the plaintiffs up to public shame and to cause anguish and shock; however, it also alleges that Cusimano published and exhibited his article both for financial profit and to enhance his professional reputation. From the face of the complaint, therefore, it follows that Cusimano intended to publish his article and photographs as a business publication venture, albeit with disregard for the emotional distress occasioned by his actions. The authorities cited establish that the allegations must be read together and in that light defeat the plaintiffs' claim since they show that Cusimano was not acting with the single-minded purpose necessary to liability on the doctrine of prima facie tort.

Moreover, this cause of action fails for the additional reason that Cusimano was acting under the protection of the constitutional guarantee of freedom of speech and press. We know of no precedent wherein the doctrine of prima facie tort has been applied to one exercising the privilege to comment on matters of legitimate public concern, regardless of his intent.

It is apparent that the plaintiffs seek to recover damages for interference with rights of a personal nature rather than for interference with rights to exclusive possession of property. Although a cause of action for trespass could be established upon the fact of Cusimano's entering upon plaintiffs' property, unless that entry was justified by his status as a radio station employee investigating the death of two children, that cause of action has not been well pleaded.

The complaint fails to allege damages proper to a trespass action, where on the present facts the plaintiffs could claim only nominal damages and punitive damages designed to discourage interference with property rights.

There is no support for plaintiffs' argument that damages for injury to reputation and for emotional disturbance are recoverable on the alleged facts as the natural consequence of the trespass. A trespasser may be subject to liability for physical harm done while on the land, irrespective of whether his conduct would be subject to liability were he not a trespasser. (Restatement, Torts 2d [1965], § 162.) However, since the tort of trespass is designed to protect interests in possession of property, damages for trespass are limited to consequences flowing from the interference with possession and not for separable acts more properly allocated under other categories of liability. Cases cited by the respondents are not inconsistent with this position and are clearly distinguishable from the facts of the instant case. In *Preiser* v. *Wielandt* (48 App. Div. 569) plaintiff's wife, then pregnant and suffering from a heart disease, died from fright caused by the trespass. In *Van Alstyne* v. *Rochester Tel. Corp.* (163 Misc. 258) plaintiff's dogs died after eating lead wrongfully dropped on plaintiff's property. In both cases, the harm arose directly from the trespass unlike the instant case where the harm rose as a consequence of acts performed after the trespass.

The order appealed from should be reversed and the complaint dismissed, with costs.

GOLDMAN, P. J., MARSH, WITMER, MOULE and HENRY, JJ., concur.

Order unanimously reversed on the law with costs, motions granted and complaint dismissed.