OPINION OF THE COURT
David O. Boehm, J.
In this case of apparent first impression in New York the plaintiffs are moving for summary judgment on the ground that certain affirmative defenses in the defendants’ answers have no merit and should be stricken. Although the motion is brought under CPLR 3212, it appears that the application is actually one to dismiss defenses under CPLR 3211 (subd [b]) and the motion is converted accordingly.
It appears that on the morning of September 9, 1980, defendant Ronald Storm, an investigator employed by defendant, the Humane Society of Rochester and Monroe County, in response to complaints about the plaintiffs, procured a search warrant authorizing him to enter plaintiffs’ house and seize any animals “found to be in a confined, crowded or unhealthy condition or in unhealthy or unsanitary surroundings or *** not properly cared for or without sustenance, food and drink.” Before executing the warrant, Storm contacted three television stations, defen *905 dants WROC-TV, WHEC-TV and WOKR-TV, informed them of the impending search and invited them to send newscasters and photographers to accompany him inside the premises. When he appeared at the plaintiffs’ house at 89 Arch Street in Rochester, he was met by several television photographers and reporters who accompanied him into the plaintiffs’ home. There they filmed the interior and the story was broadcast on the evening news shows of WROC-TV and WOKR-TV.
The complaint and plaintiffs’ bill of particulars allege that plaintiff, Joy E. Brenon, asked the television people to stay out of her house but they entered notwithstanding her instructions.
Thereafter plaintiffs commenced this action. Damages are sought against defendants Ronald Storm and the Humane Society of Rochester and Monroe County, claiming that they abused the search warrant and against the three television stations and their named individual employees for trespass.*
The answers of the television stations and their employees have raised a number of affirmative defenses which are the subject of the present motion.
The defenses moved against are those set forth in paragraph “second” of the answer of WOKR-TV which claims as a defense that as television reporters and photographers, they have an absolute privilege; paragraphs “first”, “second” and “third” of the answer of WROC-TV which respectively allege that the public’s right to access to information of public interest made their conduct reasonable, that the entry was constitutionally protected, and that based upon custom and usage and the social necessity of the need to assure access to information in matters of public interest, defendants had the implied consent of the *906 plaintiffs; and lastly, paragraphs “second” and “fourth” of the answer of WHEC-TV, which allege respectively that plaintiffs’ premises were open to the public or, through custom and usage, were established as public areas and, therefore, its conduct was nontrespassory and privileged, and that the entry was nontrespassory and privileged because it was made to observe and record a genuinely newsworthy event which made the plaintiff’s premises open to the public by custom and practice.
In opposing plaintiffs’ motion, defendants rely very heavily upon the Florida case of Florida Pub. Co. v Fletcher (340 So 2d 914 [Fla], cert den 431 US 930). That case turns on the principle that consent, whether express or implied, is a defense to an action for trespass and that consent may be implied from custom, usage or conduct. We agree with the law as stated by the court, but not with the conclusion it draws therefrom, at least with respect to the issue before it.
In that case fire damaged the home of the respondent while she was away visiting a friend and her 17-year-old daughter died. The fire marshall and police sergeant entered the house to make an official investigation and invited the news media to accompany them, which was done through an open door and without objection. Mrs. Fletcher first learned of her daughter’s death by reading a newspaper story and viewing a photograph of her dead daughter’s silhouette left on the floor after her body was removed. She brought an action against the newspaper publisher for trespass and invasion of privacy and intentional infliction of emotional distress. The Florida Supreme Court held that Mrs. Fletcher could not recover under trespass, finding an implied consent which authorized the newspaper photographer’s entry into the home by virtue of “ ‘a longstanding custom and practice throughout the country for representatives of the news media to enter upon private property where disaster of great public interest has occurred *** and at the invitation of the officers who are investigating the calamity.’” (340 So 2d 914, 918, supra.)
It was on the basis of affidavits of news editors throughout Florida and the Nation and affidavits of Florida law *907 enforcement officials that the Florida Supreme Court found it to be the custom and practice which authorized the entry in that case. I respectfully disagree. The gathering of news and the means by which it is obtained does not authorize, whether under the First Amendment or otherwise, the right to enter into a private home by an implied invitation arising out of a self-created custom and practice. This is a bootstrap argument which does not eliminate the trespassory conduct of the defendants in this case.
It is hornbook law that consent as a defense to an action in trespass must be given by the owner or possessor of the premises (61 NY Jur, Trespass, §31). Although consent may be implied from custom, usage or conduct, it may not be extended by inference to justify the unlicensed entry of others (75 Am Jur 2d, Trespass, § 41). Although otherwise trespassory conduct may be legalized or justified by lawful authority, such as an officer of the law acting in the performance of his duty (id., § 43), such authority does not extend by invitation, absent an emergency, to every and any other member of the public, including members of the news media.
An analogy may be drawn from an early Michigan case in which a doctor attending a pregnant woman did not inform either the woman or her husband that the young man accompanying and assisting him was not a doctor. The court in permitting recovery held that although she consented to the presence of the doctor as well as to the young man, supposing him to be a physician, this did not preclude her from bringing an action for invasion of privacy and recovering damages. In short, her permission to her doctor did not extend to anyone else (De May v Roberts, 46 Mich 160; see, also, Prahl v Brosamle, 98 Wis 2d 130).
What must be remembered is that news people do not stand in any favored position with respect to newsgathering activity. The United States Supreme Court has repeatedly held that the First Amendment right to speak and publish does not carry with it the unrestrained right to gather information. News people have no special First Amendment immunity or special privilege to invade the rights and liberties of others (see Branzburg v Hayes, 408 US 665; Pell v Procunier, 417 US 817; Houchins v KQED, *908 438 US 1; Zemel v Rusk, 381 US 1; Lewis, A Preferred Position for Journalism?, 7 Hofstra L Rev 595; Note, The Rights of the Public and the Press to Gather Information, 87 Harv L Rev 1505; First Amendment as Immunizing Newsman from Liability for Tortious Conduct while Gathering News, Ann. 28 ALR Fed 904).
As observed by the Second Circuit in Galella v Onassis (487 F2d 986, 995-996): “Crimes and torts committed in news gathering are not protected *** There is no threat to a free press in requiring its agents to act within the law.” (See, also, Le Mistral, Inc. v Columbia Broadcasting System, 61 AD2d 491, app dsmd 46 NY2d 940.)
Thus, lawful restrictions may be imposed upon the free exercise of other First Amendment rights where the exercise of such rights is sought by unauthorized entry onto private property (see Watchtower Bible & Tract Soc. v Metropolitan Life Ins. Co., 297 NY 339, cert den 335 US 886, reh den 335 US 912 [distribution of religious literature]; Adderley v Florida, 385 US 39 [civil rights demonstration]). As the United States Supreme Court has pointed out: “[W]here property is not ordinarily open to the public, this Court has held that access to it for the purpose of exercising First Amendment rights may be denied altogether.” (Food Employees v Logan Plaza, 391 US 308, 320.)
In a case where the factual circumstances were ironically reversed, it appears the First Amendment suffered a strange sea change. The defendants there, without permission, entered into a studio of the Columbia Broadcasting System (CBS) in an attempt to exercise their right of free speech by publicizing what they claimed was unfair and unequal treatment of homosexuals in television news broadcasts. CBS was not deterred by the First Amendment from bringing charges against them of criminal trespass and they were duly convicted (People v Segal, 78 Misc 2d 944).
Defendants Beni Broadcasting of Rochester, Inc., WHEC-TV, John Thompson and Dick Scheltz make the argument that they do not seek an absolute privilege but only a qualified privilege which would excuse only a certain degree of intrusion, the scope of the invasion being *909 balanced against the public interest served. Thus, the degree of intrusion sought to be justified would be measured against the newsworthiness of the story and it would be left to a jury to determine whether the intrusion was privileged because of the public interests served in covering the story. Any other approach, they argue, would “border on prior restraint.” As an analogy they urge consideration of the law of defamation which, while it does not permit prior censoring of a story, allows the damages if a jury finds the existence of malice and the absence of good faith and fair comment.
While the argument appears persuasive on the surface, it does not, on deliberation, hold water. Assessing the degree of the intrusion against the newsworthiness of the story is a test that is too vague and subjective to counterbalance the predominant interest served in protecting the rights of individuals in a free society against invasion of their privacy or their home. As noted by one commentator: “Even if the information sought were considered especially important, an ad hoc balancing test would seem improper since it would determine the lawfulness of the means of gathering according to the end value of the information gained in each case. Moreover, it would often be difficult to determine if the activity at issue was pursued with the ultimate objective of obtaining information, and any measurement of the value of the information obtained would involve vague, subjective criteria.” (Note, The Rights of the Public and the Press to Gather Information, 87 Harv L Rev 1505, 1515.)
Furthermore, as emphasized by the Court of Appeals for the Ninth Circuit in Dietemann v Time, Inc. (449 F2d 245), the privilege concepts in defamation cases in which publication is an essential element do not apply in determining liability for tortious conduct which antedates the publication. The court in Dietemann focused on the methods used by defendant in obtaining the information rather than upon publication, holding the tort to be complete with the obtaining of the information by intrusive means. The cause of action in that case (invasion of privacy) existed independent of and was in no way dependent upon publication (see, *910 also, Pearson v Dodd, 410 F2d 701, 704, cert den 395 US 947).
The fact that the person intruded upon was suspected of criminal conduct did not excuse the defendant from liability in Dietemann, nor does it here. As stated by the Dietemann court: “The First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering. The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another’s home or office. It does not become such a license simply because the person subjected to the intrusion is reasonably suspected of committing a crime.” (449 F2d 245, 249, supra; see, also, Gill v Curtis Pub. Co., 38 Cal 2d 273, 277.)
In addition, the case law relied upon by the Florida District Court and quoted with approval by the Supreme Court in Florida Pub. Co. v Fletcher (340 So 2d 914, 916 [Fla], supra) was not applicable to the question before it.
Prior v White (132 Fla 1) dealt with an unconstitutional ordinance making the soliciting of orders for sellers of merchandise upon private residence without request or invitation a nuisance. The constitutional principles in that case as well as in Martin v Struthers (319 US 141), in which the United States Supreme Court struck down as unconstitutional a city ordinance making it an unlawful trespass to knock on doors and ring doorbells to distribute religious literature, are inapposite to a case involving an implied invitation to enter into a dwelling place to film a news story. Boston Mfrs. Mut. Ins. Co. v Fornalski (234 So 2d 386 [Fla]) merely held that permission implied from custom and usage to a girl to come upon a neighbor’s premises for certain purposes did not cover her under her neighbor’s homeowners insurance policy, insuring against injuries sustained by one on the premises with permission, where the girl was injured in a struggle with another person on adjacent premises which carried over onto the neighbor’s premises. In McKee v Gratz (260 US 127) Justice Holmes held only that a license to enter upon unenclosed land to hunt and fish may be implied from the habits of the country. He observed (supra, p 136): “The strict rule of the English common law as to entry upon a close must be *911 taken to be mitigated by common understanding with regard to the large expanses of unenclosed and uncultivated land in many parts at least of this country. Over these it is customary to wander, shoot and fish at will until the owner sees fit to prohibit it. A license may be implied from the habits of the country.”
The additional text references used by the Florida Supreme Court to support its position are merely repetitive of the same rule, i.e., that permission to enter upon the property of another may be implied from custom, usage and conduct.
But it begs the question to assert a principle of general law and, by virtue of its existence in the air so to speak, hold that it may be applied in every case involving a trespass merely because it is asserted. To begin with, such implied consent or license comes about from words and acts of the parties, from acquiescence as well as custom, as where a person carries on a business and a general invitation to the public to enter his place of business is implied. The same principle applies to visits of solicitors seeking orders for merchandise but, even as to this, custom and usage does not permit entry, without invitation, into a private dwelling (87 CJS Trespass, § 49, subd b; 75 Am Jur 2d, Trespass, §41).
Furthermore, it would seem that whatever such custom might be, it would apply to particular properties only,, not indiscriminately to any and every property in which, at any given time and according to the unimpeded judgment of newspeople, there is an event occurring which they alone deem newsworthy. This would give the media far greater right than the State itself and would wholly subsume the Fourth Amendment into the First without even the prior neutral, detached review required before a search warrant may be issued (see Note, Invasion of Privacy by Intrusion, Dietemann v Time, Inc., 6 Loyola of Los Angeles U L Rev 200).
If the news media were to succeed in compelling an uninvited and nonpermitted entry into one’s private home whenever it chose to do so, this would be nothing less than a general warrant, equivalent to the writs of assistance *912 which were so odious to the American colonists. William Pitt, later Lord Chatham, found this unchecked intrusion so offensive to a free people that he denounced it in words which again bear repetition: “The poorest man may in his cottage bid defiance to all the forces of the crown. It may be frail — its roof may shake — the wind may blow through it — the storm may enter — the rain may enter — but the King of England cannot enter! — all his force dares not cross the threshold of the ruined tenement!”
There is no consent that I am aware of, whether created by law or by custom, which permits television cameras to enter where the sovereign may not.
The only other case on the point appears to be Prahl v Brosamle (98 Wis 2d 130, supra), in which under similar circumstances the Wisconsin Court of Appeals considered and rejected the holding in Fletcher. In that case police entered the land and building which included the plaintiff’s residence and laboratory after receiving a complaint that shots had been fired at four boys who were bicycling in the area. The court held that the authority of the police to enter the land did not extend to a newscaster in a suit against the newscaster and the television station for which he worked, among others. They argued that the plaintiff impliedly consented, by custom and usage, to the presence of newsmen on the premises and cited Florida Pub. Co. v Fletcher (340 So 2d 914 [Fla], supra). In rejecting this argument the court, in addition to holding that the constitutional privilege to trespass does not exist, stated (supra, pp 149-150): “We will not imply a consent as a matter of law. It is of course well known that news representatives want to enter a private building after or even during a newsworthy event within the building. That knowledge is no basis for an implied consent by the possessor of the building to the entry. Because of reasonable expectations, landowners commonly post their lands against trespassers. Businesses, professionals and homeowners are known to post their buildings against anticipated solicitations. Few private persons anticipate, however, that an unplanned newsworthy event will occur on their property. An advance objection to entry under remotely possible circumstances need not be made, and it is unreasonable to require an *913 objection after entry under distracting circumstances, especially when the identity of the intruder is unknown.”
The defendants’ reliance upon Costlow v Cusimano (34 AD2d 196) is misplaced. Although the Fourth Department there made a passing reference to the possibility of entry upon private property being justified because of the defendant’s status as a radio station employee investigating the death of two children, this was clearly dictum and not necessary to the resolution of that case.
Even were it necessary to decide this application solely upon the factual differences between the instant case and Fletcher the same result would obtain. In Fletcher the Florida court characterized the fire as “ ‘a disaster of great public interest’” (340 So 2d 914, 918, supra). The entry here by the Humane Society investigator can hardly be compared to a fire which took the life of a young person. In Fletcher the newspaper photographer, after being invited into the house, was asked to take the silhouette picture which was made a part of the official investigation file as it was important to show that the body was already on the floor before the heat of the fire did any damage in the room. The defendants here do not contend that they had any role whatsoever in assisting the investigation.
Additionally, the record before me does not approach the record in Fletcher. In contrast to the multitude of affidavits there, the only affidavit introduced by the defendants here in support of their position is that of Gabe Dalmath, the news manager for defendant WHEC-TV, and as to that, there is a complete lack of factual data to support the self-serving conclusions contained in it. This is clearly insufficient. (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 342; Metropolitan Bank of Syracuse v Hall, 52 AD2d 1084.) As the plaintiffs correctly argue, one may not create an implied consent by asserting that it exists and without evidence to support it. In passing, and as previously noted, it also appears from the complaint and plaintiffs’ bill of particulars that the entry was made in disregard of plaintiff Joy Brenon’s express instructions to stay out.
The plaintiffs’ motion is granted in all respects.

 In the causes of action against Storm and the Humane Society plaintiffs allege that certain valuable items of property were taken from their home by either Storm or the reporters who accompanied him. In specifying their damages in a bill of particulars served upon defendant WROC-TV, however, plaintiffs indicated that they will also attempt to recover the value of the missing property in its trespass actions. If this were the only damage claimed from the trespasses alleged, those actions might be subject to dismissal as insufficiently pleaded (see Costlow v Cusimano, 34 AD2d 196). However, the bill of particulars indicates that plaintiffs will also seek recovery for physical harm done to their property as well as punitive damages, both of which are properly recoverable in a trespass action (see Costlow v Cusimano, supra).