DECISION AND ORDER

LARIMER, Chief Judge.

BACKGROUND

On December 29, 1994, plaintiffs, Charles and Mary Reynolds, filed a complaint against the United States and Leonard Lisenbee (“Lisenbee”), pursuant to the Federal Tort Claims Act (28 U.S.C. §§ 2671 et seq.) and 42 U.S.C. § 1983. In essence, plaintiffs allege that Lisenbee committed trespass and defamation and violated plaintiffs’ civil rights during the course of an investigation he conducted for the United States Fish and Wildlife Service. Before the Court is defendants’ motion to substitute the United States for Lisenbee as party defendant and to dismiss the complaint. For the reasons discussed, supra, the United States is substituted for Lisenbee and the complaint is dismissed.

FACTS

The events giving rise to the present complaint occurred on October 8, 1992, on the opening day of the 1992-93 duck hunting season. Charles, along with his son David and several friends were hunting in various locations on Charles’ property in and around what is known as Hinman Swamp in Schuyler County, New York. On the same morning that Charles and his group were duck hunting, Lisenbee, a United States Fish and Wildlife Service Special Agent, went to Hinman Swamp [1]. Lisenbee had begun an investigation into hunting in the area as a result of information he received that during the previous hunting season, over 100 ducks were killed on the property.
On the morning of the incident, Lisenbee parked his vehicle next to what he refers to as an abandoned railroad right-of-way and walked down a road that went into the swamp. Lisenbee claims that he heard gunshots being fired in the vicinity, and stationed himself in an area where he could observe the hunters. Lisenbee also claims that he saw the hunters fire at, miss, wound, and/or kill over thirty birds. Plaintiffs dispute that Lisenbee could observe any hunters due to the thick brush in the area.
At approximately 9:00 a.m., plaintiffs’ son, David, exited the woods carrying a mesh bag. Lisenbee approached David and asked him to dump the contents of the bag. According to Lisenbee, the bag contained eleven dead ducks. Lisenbee asked for David’s hunting license and duck hunting stamp. When David presented these two items, Lisenbee noticed that the duck stamp had not been signed as required by 16 U.S.C. § 718b(a).
David informed Lisenbee that he was diabetic and needed food immediately. Lisenbee allowed David to go home and instructed him to return after he got something to eat. When David returned, he was accompanied by his mother, Mary, and his father, Charles. Charles accused Lisenbee of trespassing and requested that he leave the property. Lisenbee refused to leave. After this exchange *94 between Lisenbee and Charles, Lisenbee arrested David for various violations of the Migratory Bird Treaty Act.[2] According to Charles, during the course of the arrest and thereafter, Lisenbee made statements to David and to others, falsely claiming that one hundred wood ducks had been slaughtered on the property at the beginning of the previous year’s duck season and that he heard shooting as early as 6:20 a.m. on October 8, 1992[3]. According to Charles, since this incident, the parties who hunted on his property that day do not hunt there anymore.

DISCUSSION

1. Substitution of United States for Lisenbee as Defendant
Defendants move to substitute the United States for Lisenbee as party defendant. Under the FTCA,
“[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim ... shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant.” 28 U.S.C. § 2679(d)(1).
Interpreting § 2679(d)(1), the Supreme Court recently has held that courts may review the Attorney General’s certification that an employee was acting within the scope of his employment. Gutierrez v. Lamagno, — U.S. -, -, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995). Additionally, the Second Circuit has held that a district court’s de novo review of an Attorney General’s certification of scope of employment “is triggered by the government’s motion for substitution and opposition papers from the plaintiff that allege with particularity facts relevant to the scope of employment issue.” McHugh v. University of Vermont, 966 F.2d 67, 74 (2d Cir.1992).
In the present case, the Attorney General, through her designee, has certified that Lisenbee was acting within the scope of his employment at the time of the incident in question. Defendants have also submitted a declaration from William A. Donato (“Dona-to”), Lisenbee’s supervisor, in which Donato represents that he reviewed the reports of the law enforcement operation at issue and attests that Lisenbee was acting within the scope of his authority as a Fish and Wildlife Special Agent.
Plaintiffs oppose the substitution, claiming that, even if Lisenbee was acting within the scope of his employment when he trespassed on plaintiffs’ land, his subsequent slander of plaintiffs falls outside that scope.
After independently reviewing the Attorney General’s certification and applying New York law[4], I find that Lisenbee was acting within the scope of his employment.
In New York, an employee’s act is within the scope of employment if “the act was done while the servant was doing his master’s work, no matter how irregularly, or with what disregard of instruction.” Riviello v. Waldron, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979).
“Among the factors to be weighed are: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.” Id. at 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278.
In order to be deemed to be acting within the scope of his employment, the em *95 ployer “must be exercising or have the power to exercise some control, directly or indirectly, over the employee’s activities.” Blesy v. United States, 443 F.Supp. 358, 361 (W.D.N.Y.1978). See Clark v. Hoff Bros. Refuse Corp., 72 A.D.2d 936, 937, 422 N.Y.S.2d 219 (4th Dep’t 1979).
Furthermore, although there is a foreseeability requirement, New York courts require foreseeability of general, rather than specific, acts. Savarese v. City of N.Y. Housing Authority, 172 A.D.2d 506, 567 N.Y.S.2d 855 (1st Dep’t 1991); Young Bai Choi v. D & D Novelties, Inc., 157 A.D.2d 777, 550 N.Y.S.2d 376 (2d Dep’t 1990).
In the present case, defendants have submitted a job description for Lisenbee’s position as Special Agent. The description indicates that, among other things, a Special Agent:
Plans, directs, and independently conducts difficult investigations of persons ... suspected of offenses against the criminal laws of the United States......conducts the full range of ... law enforcement activities which routinely include surveillance; participating in raids; interviewing witnesses; interrogating suspects; searching for physical evidence and clues; conducting seizures of contraband, equipment and vehicles; securing and serving warrants, making arrests; inspecting records and documents ...
(Standard Position Description for Special Agents of the Fish and Wildlife Service, attached as Exhibit B to defendants’ Reply Memorandum).
From the description of the duties of a Special Agent, the only conclusion that can be reached is that Lisenbee was acting within the scope of his employment.
Plaintiffs’ argument that Lisenbee’s slanderous statements takes his conduct outside the scope of his employment is unconvincing. Initially, I am not at all convinced that Lisenbee’s statements constitute slander. In New York, in order to establish a cause of action for slander, plaintiff must demonstrate: (1) an oral defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the defendant, and (4) resulting in injury to the plaintiff. Weldy v. Piedmont, 985 F.2d 57, 61 (2d Cir.1993). Taking plaintiffs’ allegations as true, plaintiffs have not demonstrated that the comments were made “regarding” them. The offending remarks, according to plaintiffs, include the statements that there had been “a slaughter of ducks” on plaintiffs’ property the previous year and that Lisenbee had heard shooting as early as 6:20 a.m. on October 8,1992. Nowhere is there an allegation that Lisenbee stated that plaintiffs “slaughtered” ducks or fired shots at 6:20 a.m.
In any event, even if the statements do state a cause of action for slander, New York case law dictates that the statements are insufficient to remove Lisenbee’s actions from his scope of employment. As stated above, New York only requires general foreseeability, not foreseeability of specific acts. Given the context within which the statements were made, it cannot be seriously disputed that the statements were generally foreseeable. The statements were made during the course of the investigation and arrest. Furthermore, the comments related to how and why Lisenbee commenced and pursued the investigation. Simply put, Lisenbee’s statements are precisely the type of statements that would be generally foreseeable to his employer.
Thus, the government’s motion to substitute the United States for Lisenbee is granted and Lisenbee is dismissed as a defendant in the action.
II. Defamation
The substitution of the United States in place of Lisenbee as party defendant, requires that plaintiffs’ defamation claim be dismissed. The FTCA explicitly bars tort claims against the United States that are based on libel and slander. 28 U.S.C. § 2680(h). In accordance with § 2680(h), federal courts have consistently dismissed such claims. B & A Marine Co, Inc. v. American Foreign Shipping Co., Inc., 23 F.3d 709 (2d Cir.), cert. denied, — U.S. -, 115 S.Ct. 421, 130 L.Ed.2d 336 (1994); Mack v. Alexander, 575 F.2d 488 (5th Cir.1978); Metz v. United States, 788 F.2d 1528 *96 (11th Cir.), cert. denied, 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986).
Furthermore, even though plaintiffs are barred from pursuing a defamation claim against the United States, they may not pursue the claim against Lisenbee. The Second Circuit has held that a plaintiff who is precluded from asserting a defamation claim against the United States, is also precluded from asserting the claim against an employee of the United States where that employee was acting within the scope of his employment, notwithstanding that plaintiff would be left without a remedy. B & A Marine, 23 F.3d at 715. See also United States v. Smith, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).
Thus, I find that plaintiffs’ defamation claim must be dismissed.
III. 42 U.S.C. § 1983
Plaintiffs’ complaint also alleges a violation of 42 U.S.C. § 1983. It is clear that plaintiffs have not stated a valid claim under § 1983. “[A] prerequisite for relief under § 1983 ... is that the defendant acted under color of state law. An action brought pursuant to ... § 1983 cannot lie against federal officers.” Kingsley v. Bureau of Prisons, 937 F.2d 26, 30, n. 4 (2d Cir.1991) (citations omitted). It is undisputed that Lisenbee, as a special agent for the United States Fish and Wildlife Service, is a federal officer. Therefore, I find that a § 1983 action against Lisenbee will not lie and should be dismissed.
IV. Trespass
Plaintiffs’ complaint sets forth two trespass claims. The first cause of action claims that the United States committed a trespass against plaintiff Charles Reynolds. The second cause of action claims that Lisenbee committed a trespass against both Charles and Mary Reynolds. Since the United States has been substituted for Lisenbee, both trespass claims will be considered as against the United States.
Examining the trespass claim under New York law[5], I find that plaintiffs’ trespass claim is meritless.
Under New York law, law-enforcement officials have a privilege to enter private property to perform their legal duties.[6] See People v. Czerminski, 94 A.D.2d 957, 464 N.Y.S.2d 83 (4th Dept.1983). Although plaintiffs claim that the court should not rely on this privilege for state law-enforcement officers, I am unconvinced by their argument. Plaintiffs argue that under the FTCA, if the United States is liable, it is hable to the same extent as a “private person.” Plaintiffs thus suggest that Lisenbee’s conduct should be examined as if he were a private person not a police officer. Such an argument is frivolous because it stands reality on its head. Lisenbee was on the property precisely because he was a police officer acting within the scope of his employment.
The FTCA provides that the United States may be held liable “to the same extent as a private individual under like circumstances.” 28 U.S.C. § 2674 (emphasis added). Plaintiffs seem to ignore the “under like circumstances” language. That language is not superfluous but rather plays an important role in the interpretation of the statute. “The ‘like circumstances’ language in § 2674 means that ‘the liability assumed by the Government ... is that created by “all the circumstances,” not that which a few of the circumstances might create.’ ” Caban v. United States, 728 F.2d 68, 73-74 (2d Cir.1984), quoting Feres v. United States, 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950). Obviously, the “circumstances” at issue here involve the activities of a police officer, not a private citizen. “Thus, notwithstanding any circumstances in which state law would hold a private person liable for his acts, if those circumstances are in any mate *97 rial respect not ‘like’ those in which the government’s act occurred, there has been no FTCA waiver of sovereign immunity.” Caban, 728 F.2d at 74.
Additionally, in Castro, wherein a plaintiff sued the government for the negligence of DEA agents participating in a narcotics raid in her apartment, the court stated that “although qualified immunity will not immunize the United States from liability, the liability must be assessed in light of the liability that New York would impose upon a person having legal authority to participate in the narcotics raid at issue ...” Castro, 34 F.3d at 111.
Similarly, in assessing the government’s liability in the present ease, the court must assess the liability that New York would impose upon a person having legal authority to participate in the investigation in and around plaintiffs’ property, to question individuals, to make arrests, i.e. a law-enforcement officer. In New York, a law-enforcement officer’s privilege to enter upon premises depends upon the purpose for which he enters or remains upon the property; if the purpose is performance of his public duty, the actions are privileged, but if there is no such public purpose, there can be no privilege. Czerminski, 94 A.D.2d 957, 464 N.Y.S.2d at 83-84; Anderson v. WROC-TV, 109 Misc.2d 904, 441 N.Y.S.2d 220 (1981).
In the instant action, Lisenbee was on plaintiffs’ property to perform his public duty, i.e. to conduct an investigation into possible illegal hunting. Plaintiffs do not dispute the purpose for Lisenbee’s presence on their land. At most, they claim that Lisenbee’s investigation methods were inappropriate, that he relied on stale information from a “dubious” source and that he did not use due care in the course of his investigation. Even if plaintiffs’ allegations are true, they do not change the fact that Lisenbee was performing his public duty on the morning of October 8, 1992 when he entered onto plaintiffs’ property to conduct an investigation into possible violations of federal law.
I find that, pursuant to New York law, Lisenbee was performing his duty as a special agent and so had a privilege to enter onto plaintiffs’ property. Thus, I find that plaintiffs’ trespass claim should be dismissed [7].

CONCLUSION

For the above-stated reasons, defendants’ motion to substitute the United States as party defendant for Lisenbee is GRANTED and the complaint is DISMISSED in its entirety.
IT IS SO ORDERED.

. Defendants refer to the swamp as Hooker Swamp. Plaintiffs contend that there is no such place called Hooker Swamp. According to plaintiffs, the property owned by plaintiffs is known as Hinman Swamp. For purposes of this motion, the property at issue will be referred to as Hinman Swamp.

. The son eventually pled guilty to unlawfully taking wild waterfowl without a validated migratory duck stamp, in violation of 16 U.S.C. § 718b.

. Apparently, under the Migratory Bird Treaty Act, hunting was allowed to begin one-half hour prior to sunrise.

. In determining whether an employee was acting within the scope of employment, the court must look to the law of the state in which the conduct occurred. McHugh v. University of Vermont, 758 F.Supp. 945, 951 (D.Vt.), affirmed, 966 F.2d 67 (2d Cir.1992). In the present case, the relevant conduct occurred in New York.

. “With respect to tort claims as to which the United States has waived its sovereign immunity, the FTCA requires the court to apply the substantive law of the place where the event occurred." Castro v. United States, 34 F.3d 106, 110 (2d Cir.1994).

. In New York, trespass is the interference with a person's right to possession by unlawful act or by lawful act performed in an unlawful manner. Ivancic v. Olmstead, 66 N.Y.2d 349, 497 N.Y.S.2d 326, 488 N.E.2d 72 (1985), cert. denied 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986).

. Plaintiff Mary Reynolds claims are also barred due to her failure to exhaust her administrative remedies. The FTCA requires every plaintiff to file an administrative claim with a federal agency prior to initiating a tort suit against the United States. 28 U.S.C. § 2675. It is undisputed that Mary Reynolds did not file any such administrative claim relating to the subject matter of the present lawsuit. Therefore, her claims under the FTCA must be dismissed.