Linus C. PAULING et al., Appellants,

v.

Robert S. McNAMARA et al., Appellees.

No. 17797.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 15, 1963.

Decided Dec. 23, 1963.

Petition for Rehearing En Banc Denied Jan. 23, 1964.

Certiorari Denied May 18, 1964. See 84 S.Ct. 1336.

Mr. Francis Heisler, Chicago, Ill., with whom Mr. Oliver Ellis Stone, Washington, D. C., was on the brief, for appellants.

Mr. John C. Eldridge, Attorney, Department of Justice, for appellees. Asst. Atty. Gen. John W. Douglas, Messrs. David C. Acheson, U. S. Atty., Sherman L. Cohn and David J. McCarthy, Jr., Attorneys, Department of Justice, were on the brief for appellees. Mr. Morton Hollander, Attorney, Department of Justice, also entered an appearance for appellees.

Miss Marie S. Klooz, Washington, D. C., filed a brief on behalf of Austrian Pacifist Union, et al., as amici curiæ, urging reversal.

Before BAZELON, Chief Judge, and BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This appeal presents, for the second time in less than three years, an effort to enlist judicial power to stop all nuclear testing, including underground tests.

The complaint [1] filed by appellants sought a declaratory judgment to restrain and enjoin the Secretary of Defense and the members of the Atomic Energy Commission from detonating any nuclear weapons that produce radiation or radioactive atomic nuclei or alternatively to issue such injunction effective only when, and if, a similar injunction is issued by the Supreme Court of the Union of Soviet Socialist Republics from which, it is alleged, similar relief is being sought.

The District Court granted appellee's motion to dismiss the complaint on the grounds that (1) plaintiffs had no standing to sue; (2) the complaint failed to state a justiciable controversy, (3) the actions and powers challenged were plainly authorized by law and the Constitution, and (4) the holding of the Court of Appeals, which affirmed the

---

1. The complaint purports to assert a class action on behalf of 115 U.S. citizens and more than 100 aliens, including nationals of several neutral and friendly nations, and of Poland, Czechoslovakia and Hungary.

dismissal of a complaint in Civil Action No. 866–58, was res judicata.[2]

The District Court was plainly correct on all points.

In light of the historic limits on judicial power vis-à-vis the other coordinate branches of government and especially in light of our prior clear holding that a claim such as now asserted presents no justiciable controversy,[3] it is difficult to escape an impression that the appellants, no matter what their motives, may be more interested in exploiting the judicial process as an implement of propaganda than in securing any judicial mandates that could conceivably be anticipated.

■ As recently as 1950 Mr. Justice Frankfurter restated in very broad terms the scope of federal judicial power:

"Limitation on 'the judicial Power of the United States' is expressed by the requirement that a litigant must have 'standing to sue' or, more comprehensively, that a federal court may entertain a controversy only if it is 'justiciable.' Both characterizations mean that a court will not decide a question unless the nature of the action challenged, the kind of injury inflicted, and the relationship between the parties are such that judicial determination is consonant with what was, generally speaking, the business of the Colonial courts and the courts of Westminster when the Constitution was framed." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 150, 71 S.Ct. 624, 95 L.Ed. 817 (1950) (separate opinion).

In our 1960 holding we tried, perhaps too tersely because the point seemed so plain, to make clear that decisions in the large matters of basic national policy, as of foreign policy, present no judicially cognizable issues and hence the courts are not empowered to decide them. We paraphrase our earlier opinion in emphasizing that to temporize with these fundamental propositions by holding this case moot because the United States is presently committed to a suspension of atmospheric testing is to take some risk, however slight or remote, of seeming to invite further resort to the courts should testing be resumed. We are unwilling to suggest, even so indirectly, any erosion of the fundamental principle that the executive action challenged by the pleadings plainly falls in that area where the Executive and Legislative Branches are supreme and final, reviewable only by the electorate, not by the courts. The language of the Court in Chicago & Southern Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948), is very much in point here:

"Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative. They are delicate, complex, and involve large elements of prophecy. They are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil. They are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and which has long been held to belong in the domain of political power not subject to judicial intrusion or inquiry. [Citing Coleman v. Miller, 307 U.S. 433, 454, 59 S.Ct. 972, 83 L.Ed. 1385 (1939); United States v. Curtiss-Wright Corp., 299 U.S. 304, 319–321, 57 S.Ct. 216, 81 L.Ed. 255 (1936); Oetjen v. Central Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918)].[4]

2. Pauling v. McElroy, 107 U.S.App.D.C. 372, 374, 278 F.2d 252, 254, cert. denied, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960).

3. *Ibid.*

4. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), cited by the dissent, is not in point; that case held only that the penal sanction of automatic forfeiture of United States citizenship could not be imposed without due process.

That appellants now resort to the courts on a vague and disoriented theory that judicial power can supply a quick and pervasive remedy for one of mankind's great problems is no reason why we as judges should regard ourselves as some kind of Guardian Elders ordained to review the political judgments of elected representatives of the people. In framing policies relating to the great issues of national defense and security, the people are and must be, in a sense, at the mercy of their elected representatives. But the basic and important corollary is that the people may remove their elected representatives as they cannot dismiss United States Judges. This elementary fact about the nature of our system, which seems to have escaped notice occasionally must make manifest to judges that we are neither gods nor godlike, but judicial officers with narrow and limited authority. Our entire System of Government would suffer incalculable mischief should judges attempt to interpose the judicial will above that of the Congress and President, even were we so bold as to assume that we can make better decisions on such issues.

Affirmed.

BAZELON, Chief Judge (dissenting).

This complaint was brought by 255 citizens of the United States and 26 other countries, including eight Nobel Laureates (one of whom has twice received the award). The plaintiffs charge that the defendants, together with their counterparts in the Soviet Union and the United Kingdom, have "caused the detonation of nuclear weapons in the air, on the ground, and under water," causing the plaintiffs "to be damaged genetically, somatically and psychologically." They seek to enjoin such activity in the future.

Since the institution of this suit, the United States and 107 other nations have signed the Nuclear Test Ban Treaty:

"Seeking to achieve the discontinuance of all test explosions of nuclear weapons for all time, determined to continue negotiations to this end, and desiring to put an end to the contamination of man's environment by radioactive substances,

\* \* \* \* \* \*

"Each of the Parties to this Treaty undertakes to prohibit, to prevent, and not to carry out any nuclear weapon test explosion, or any other nuclear explosion, at any place under its jurisdiction or control.
\* \* \*

"in the atmosphere; beyond its limits, including outer space; or underwater, including territorial waters or high seas \* \* \*.[1]

Accordingly, there is not such a likelihood that further injury will occur as to require decision of the delicate questions presented. I would therefore "reverse the judgment and remand the case to the District Court with directions to dismiss the complaint without prejudice." See my opinion concurring in part and dissenting in part in Pauling v. McElroy, 107 U.S.App.D.C. 372, 374, 278 F.2d 252, 254 (1960).

Though it disclaims doing so, the majority opinion seems to me to impugn the motives of appellants, which I think should not be done. Moreover the opinion attributes greater limitations to judicial power than the Constitution requires or the decision in this case makes necessary. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 164–165, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), and cases

---

1. Treaty Banning Nuclear Weapon Tests in the Atmosphere, in Outer Space and Under Water, August 5, 1963, —— U. S. Treaties and Other International Agreements ——.

The complaint does not refer to underground testing. Although certain underground testing is not banned by the Treaty, the parties thereto specifically undertake to seek "a treaty resulting in the permanent banning of all nuclear test explosions, including all such explosions underground."

there cited; Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952); Little et al. v. Barreme et al. (The Flying Fish), 2 Cranch 170, 2 L.Ed. 243 (1804).