**Heli NIELSON et al., Plaintiffs,**

**v.**

**Dr. Glenn T. SEABORG, Chairman of the Atomic Energy Commission, and the United States of America, Defendants.**

**No. C 170–71.**

United States District Court,
D. Utah, C. D.

Heard June 12, 1972.

Decided Sept. 26, 1972.

Alvin I. Smith, Francis J. Nielson, Salt Lake City, Utah, for plaintiffs.

H. Ralph Klemm, Asst. U. S. Atty., Salt Lake City, Utah, Irwin Goldbloom, U. S. Dept. of Justice, Washington, D. C., Thomas O. Fleming, Las Vegas, Nev., for defendants.

## MEMORANDUM

ALDON J. ANDERSON, District Judge.

Plaintiffs in this action allege irreparable injury to themselves and other residents of the State of Utah as a result of nuclear testing by the United States Atomic Energy Commission (hereinaf-

ter, the "Commission") at its Nevada test site. Jurisdiction is claimed under the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq., the Administrative Procedure Act, 5 U.S.C. §§ 701–06, the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and the Due Process Clause apparently through 28 U.S.C. § 1346(a)(2), although this final statute is not pleaded. Broad injunctive relief is sought to prevent further testing and to force Commission compliance with provisions of the National Environmental Policy Act of 1969. In addition, plaintiffs seek the establishment of a $100 million trust fund for the benefit of those Utahans who have or will suffer injuries from the Nevada tests.

Defendants moved for dismissal of the action under Rule 12(b)(1), (6) and 12(c), Federal Rules of Civil Procedure, or in the alternative for summary judgment pursuant to Rule 56(b). An affidavit supporting the motions was filed by defendants. Plaintiffs proceeded to take depositions and submit written interrogatories which have now been answered but generally failed to set forth specific facts by these means, by affidavit or otherwise in opposition to the motion for summary judgment as contemplated in these circumstances by Rule 56(e).

### FAILURE OF PLAINTIFFS TO SHOW INJURY

▪ It appears from the materials before the court that no genuine issue of fact exists at this time concerning plaintiffs' alleged injuries since no specific claim is made as to any discernible injury suffered as a result of the nuclear tests in Nevada. A review of the deposition of Dr. Pendleton, a radiation ecologist, and the defendants' answers to interrogatories reveals that radiation levels in Utah may have risen as a result of certain nuclear detonations in Nevada, but makes no suggestion of resulting injury to plaintiffs. Under these circumstances, defendants' motion for summary judgment might be granted at the outset. However, the potentially hazardous nature of radiation is well known and is evident from the record. In addition, plaintiffs contended at oral argument that evidence of actual radiation damage is "difficult to bring out" and requires exhaustive study of scientific data much of which are in the government's possession and must be the subject of extensive discovery. This contention is analogous to a Rule 56(f) showing that supporting affidavits on the question of injury are presently unavailable to plaintiffs. On these facts, the court determines summary judgment on the basis of failure to show injury to be inappropriate at this time.

### THE FEDERAL TORT CLAIMS ACT

Plaintiffs' claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., is accompanied by no averment or supporting materials to show that the claim was first presented to the appropriate federal agency as required by 28 U.S.C. § 2675(a). However, plaintiffs contend that their cause of action accrued before the 1966 amendment of Section 2675(a) made presentation of a claim to a federal agency a prerequisite for court action. They further contend, without citing authority, that the two-year statute of limitations contained in 28 U.S.C. § 2401(b) is not applicable to radiation injuries. The court does not adopt this contention.

▪ If radiation prior to 1966 caused injury which only now reasonably could be apprehended, then the cause of action did not accrue until now. *See, e. g.,* Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In this circumstance, Section 2675(a) applies as amended and the claim is not properly before the court since it has not been presented to the appropriate federal agency. *See, e. g.,* Driggers v. United States, 309 F.Supp. 1377 (D.S.C.1970). If, on the other hand, the injury reasonably could be apprehended as much as eight years ago, it is barred by the statute of limitations. Accordingly,

the court is without jurisdiction to adjudicate plaintiffs' claim under the Federal Tort Claims Act.

## THE NATIONAL ENVIRONMENTAL POLICY ACT OF 1969

The Commission conducts its Nevada tests pursuant to statutory instructions to conduct experiments and do research and development work in the "military," "industrial" and "commercial" application of atomic energy. 42 U.S.C. §§ 2121(a)(1), 2051(a)(4). The Executive evidenced its intent in this regard when, prior to the ratification of the Treaty Banning Nuclear Weapon Tests in the Atmosphere, in Outer Space and Under Water (14 U.S.T. 1313, August 5, 1963), adherence to the following "safeguard" was promised:

> (a) The conduct of comprehensive, aggressive, and continuing underground nuclear test programs designed to add to our knowledge and improve our weapons in all areas of significance to our military posture for the future. Hearings on Executive M (Treaty Banning Nuclear Weapon Tests in the Atmosphere, in Outer Space and Under Water) Before the Senate Comm. on Foreign Relations, 88th Cong., 1st Sess. 274–75, 977–81 (1963).

In addition, it appears from the record that Congress has consistently appropriated over $100 million a year for the development and operation of the Nevada test site. Furthermore, the Commission obtains periodic presidential approval for its tests.

Against this backdrop of specific congressional and presidential intendment, plaintiffs urge this court to enjoin the Nevada tests on grounds that they are "in contravention of the policies and purposes and intended effect" (complaint, paragraph 12) of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. (hereinafter referred to as "NEPA").

NEPA declares a national policy "to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man. . . ." 42 U.S.C. § 4321. To effectuate this policy, Congress imposed upon the federal government the substantive duty "to use all practicable means, *consistent with other essential considerations of national policy. . . .*" 42 U.S.C. § 4331(b) (emphasis added); *see also*, 42 U.S.C. § 4333 and the general discussion of substantive duties under NEPA in Calvert Cliffs' Coordinating Comm. Inc. v. United States Atomic Energy Comm'n, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1112–1113 (1971). Thus, in the instant case, the Commission's compliance with the general policy of NEPA is subject to its discretionary weighing of other "essential considerations."

■ Plaintiffs do not clearly charge the Commission with an abuse of this discretion in its decisions to conduct nuclear tests in fulfillment of essential considerations of national security. Even if such an abuse were alleged, the exercise of Commission discretion as it involves the tests themselves would not be reviewable by this court. Such decisions would "fall within that narrow band of matters wholly committed to official discretion" (McQueary v. Laird, 449 F.2d 608 [10th Cir. 1971]) as a result of the delicate questions of national security raised and the constitutional placement of those concerns with the political departments of government. *See also*, Pauling v. McNamara, 118 U.S.App.D.C. 50, 331 F.2d 796 (1964).

■ However, the Commission's substantive duty to comply with NEPA policies where practicable might be reviewable as to matters of operational safety. That question is not squarely before the court since the plaintiffs apparently place responsibility for allegedly improper safety standards upon the Environmental Protection Agency which is not a party to this suit. Plaintiffs do not clearly dispute the Commission's exercise of its discretion allowed by NEPA in operational matters. Furthermore,

no specific facts are alleged which would support a claimed abuse and withstand a motion for summary judgment..

Plaintiffs allege a violation of NEPA's procedural requirements as a result of the Commission's refusal to transfer to the Environmental Protection Agency safety standard setting duties in the area of nuclear testing as required by Reorganization Plan No. 3 of 1970 issued pursuant to NEPA. Printed at 42 U.S.C. § 4321 and 5 U.S.C. Appendix. Reorganization Plan No. 3 of 1970 § 2(A)(6) transfers the general standard setting powers of the Commission's Division of Radiation Protection Standards (now the Division of Radiological and Environmental Protection) to the Environmental Protection Agency. However, according to the uncontested affidavit submitted by defendants, it is the Division of Operational Safety which sets and enforces specific standards as they relate to nuclear tests—not the Division of Radiological and Environmental Protection. It does not appear from the record before us that NEPA or Reorganization Plan No. 3 has transferred from the Commission's Division of Operational Safety these or any other responsibilities as contended in plaintiffs' unsupported complaint. Thus the plaintiffs' allegation concerning the transfer of safety standard setting duties must fail.

■■ It may finally be noted that plaintiffs' memorandum of law contains, in two sentences, an allegation that the Commission's procedural duties under NEPA have not been met because the environmental impact statements (42 U.S.C. § 4332) on the Nevada test sites are insufficient. This allegation, which is more typical of NEPA litigation than plaintiffs' other charges, is not encompassed by the complaint and the court cannot consider it. Furthermore, it is unsupported by specific facts set forth in an affidavit or otherwise as required by Rule 56(e) and is therefore insufficient to withstand a motion for summary judgment in the present circumstance.

## THE ADMINISTRATIVE PROCEDURE ACT

Plaintiffs allege that by permitting nuclear testing at the Nevada test site the Commission has exceeded its authority. No supporting affidavits have been filed. We are asked under the provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (hereinafter referred to as the "APA") to review this action by the Commission.

■ It is possible that some regulatory and procedural decisions of the Commission might be reviewed under the APA, or as noted above, under NEPA, even to the extent of postponing nuclear tests until certain procedural requirements have been met. Comm. for Nuclear Responsibility, Inc. v. Schlesinger, 404 U.S. 917, 92 S.Ct. 242, 31 L.Ed.2d 191 (1971) (application for injunction in aid of jurisdiction; dissenting opinion of Justice Douglas). However, the court is precluded from reviewing the actual decision to conduct tests as requested by plaintiffs. *See supra McQueary; Pauling.*

## THE FIFTH AMENDMENT

■ The final claim contained in the complaint in this action anticipates plaintiffs' inability to obtain review of Commission actions and alleges a resulting violation of the Due Process Clause. This claim must fail as it relates to the Commission's decision in concert with the President to conduct nuclear tests. " 'Such decisions are wholly confided by our Constitution to the political departments of the government . . . .' " *Pauling, supra,* 331 F.2d at 798 quoting Chicago & Southern Air Lines v. Waterman S. S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948); *See McQueary supra.*

■ As it relates to safety and other procedural matters, this claim is defective since plaintiffs have not attempted to show by affidavit or otherwise that they have been or will be denied review of such matters when properly presented.