818 F.2d 204
 In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.
The DOW CHEMICAL COMPANY, Diamond Shamrock Chemicals
Company, Hercules Incorporated, Monsanto Company, T H
Agriculture & Nutrition Company, Inc., Thompson Chemicals
Corporation and Uniroyal, Inc., Defendants-Appellants,
v.
UNITED STATES of America, et al., Appellees.
 Nos. 1083, 1087-1090, 1092-1094, 1096, 1125 and 1126,
Dockets 85-6153, 85-6165, 85-6225, 85-6231,
85-6263, 85-6287, 85-6289, 85-6293,
85-6295, 85-6375 and 85- 6377.
 United States Court of Appeals,
Second Circuit.
 Argued April 10, 1986.
Decided April 21, 1987.
 
 Joan M. Bernott, Sp. Litigation Counsel, Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., and Raymond J. Dearie, U.S. Atty. for E.D.N.Y., of counsel), for appellee U.S.
 Leonard L. Rivkin, Garden City, N.Y., Rivkin, Radler, Dunne & Bayh, Garden City, N.Y., of counsel, for defendant-appellant Dow Chemical Co.
 Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, New York City, of counsel, for defendant-appellant Diamond Shamrock Chemicals Co.
 William Krohley, Kelley Drye & Warren, New York City, of counsel, for defendant-appellant Hercules Inc.
 John Sabetta, Townley & Updike, New York City, of counsel, for defendant-appellant Monsanto Co.
 Morton Silberman, Clark, Gagliardi & Miller, White Plains, N.Y., of counsel, for defendant-appellant T H Agriculture & Nutrition Co., Inc.
 David R. Gross, Edwin R. Matthews, and Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade, Short Hills, N.J., of counsel, for defendant-appellant Thompson Chemicals Corp.
 Judy Spanier, Shea & Gould, New York City, of counsel, for defendant-appellant Uniroyal, Inc.
 Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Our discussion of the background and procedural history of this litigation appears in Judge Winter's lead opinion, 818 F.2d 145.
 
 
 2
 In this opinion, we address the third-party claims of the chemical companies ("appellants") against the United States which were dismissed by the district court. 611 F.Supp. 1221. For the reasons that follow, we conclude that the district court did not err in thus disposing of the claims.
 
 
 3
 Transfer of the first batch of Agent Orange cases to the Eastern District of New York pursuant to the Multidistrict Litigation Statute, 28 U.S.C. Sec. 1407, was followed promptly by a variety of motions, one of which was addressed to appellants' third-party complaints. Relying largely on Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), then District Judge Pratt granted the Government's motion to dismiss the third-party pleadings. 506 F.Supp. 762, 772-74, 798. However, Judge Pratt did not enter a final order to that effect. See 534 F.Supp. 1046, 1050-51.
 
 
 4
 In 1984, Chief Judge Weinstein, responding to appellants' motion for reconsideration of Judge Pratt's order, amended the order by granting the Government's motion to dismiss "only as to the claims by the veterans and the derivative claims by their family members." He denied the Government's motion insofar as it involved the "independent claims of the plaintiffs' wives and children." 580 F.Supp. 1242, 1244. However, following settlement of the class action against appellants, Chief Judge Weinstein granted the Government's motion to dismiss that portion of the third-party complaint which involved the independent claims of the wives and children. 611 F.Supp. at 1222. Thus, all third-party claims against the Government in the instant action were dismissed.
 
 
 5
 Appellants now ask this Court to reverse the order and judgment of dismissal, insisting that the Government should reimburse them in whole or in part for the $180 million they paid pursuant to the settlement agreement. They ask us to reject the Stencel holding and the Feres doctrine upon which it was based, see Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), contending that Feres should not be applied to the "massive tort claims alleged in this unique litigation." We believe that the exact converse is true, and that the Feres doctrine was specifically intended to apply to the "[s]ignificant risk of accidents and injuries [that] attend such a vast undertaking" as is involved herein. Stencel, supra, 431 U.S. at 672, 97 S.Ct. at 2058.
 
 
 6
 The greater the scope of a military decision and the more far-reaching its effect, the more it assumes the aspects of a political determination, which, in and of itself, is not subject to judicial second-guessing, Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1948). See, e.g., DaCosta v. Laird, 471 F.2d 1146, 1147 (2d Cir.1973) (President Nixon's tactical decision to mine North Vietnam harbors held to create a non-justiciable political question); Holtzman v. Schlesinger, 484 F.2d 1307, 1310 (2d Cir.1973) (bombing of Cambodia held to involve diplomatic and military expertise not vested in judiciary and thus political in nature), cert. denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974); Pauling v. McNamara, 331 F.2d 796, 798-99 (D.C.Cir.1963) (explosion of nuclear bombs held to constitute a large matter of basic national policy and to present no judicially cognizable issue), cert. denied, 377 U.S. 933, 84 S.Ct. 1336, 12 L.Ed.2d 297 (1964). See also In re "Agent Orange" Product Liability Litigation, 818 F.2d 194, 199(2d Cir.1987). As the bombing in Cambodia was designed to protect United States military and civilian personnel from a "grave risk of personal injury or death", Holtzman, supra, 484 F.2d at 1311 n. 1, so also was the President's decision to use Agent Orange to defoliate Vietnamese jungle trails, a decision in which the South Vietnamese military, to some extent at least, participated. Recognizing as we must that our judicial system is ill-equipped to handle service-related tort claims involving hundreds of thousands of soldiers, we believe that it is in massive cases such as the instant one where the Feres doctrine is best applied.
 
 
 7
 Once the continuing vitality of the Feres doctrine is acknowledged, see, e.g., United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); H.R.Rep. No. 97-384, 97th Cong., 1st Sess. 5 (1981), reprinted in 1981 U.S.Code Cong. & Ad.News 2692, 2695, recognition of Stencel as binding authority against recovery by appellants inevitably must follow. A court considering the merits of appellants' claims would be required to answer the same questions concerning the discretionary military and political decisions of the Executive and Legislative Branches of Government that it would not feel qualified to answer in suits by individual servicemen. Stencel, supra, 431 U.S. at 673, 97 S.Ct. at 2058.
 
 
 8
 The litigation would take virtually the identical form in either case, and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety. The trial would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions.
 
 
 9
 Id.
 
 
 10
 Moreover, a recovery by appellants in the instant case would violate well-established principles of tort law. Appellants contend that they are entitled to recover both contribution and indemnity from the Government. In support of this contention, they advance a most unique theory of law, i.e., that they are entitled to recover even though the claims they settled were without merit. Both appellants and the Government have contended, and continue to contend, that Agent Orange did not cause the injuries of which the plaintiffs complain. "Third party defendants as well as third party plaintiffs agree that Agent Orange cannot be shown to have caused any injury to any member of the class." 611 F.Supp. at 1222. Nonetheless, appellants assert that they are entitled to reimbursement from the Government. They say that "[t]he district court's finding that there is no proof that Agent Orange caused harm is not relevant here." They argue that the very absence of liability justifies recovery against the Government, asserting that "[t]he overwhelming evidence in the record that Agent Orange caused no harm provides strong justification for spreading the risk." Whether we view appellants' claims against the Government as seeking contribution or indemnity, we find no merit in the above contentions. See HS Equities, Inc. v. Hartford Accident & Indemnity Co., 609 F.2d 669, 674 (2d Cir.1979).
 
 
 11
 Contribution is the proportionate sharing of liability among tortfeasors. Ingham v. Eastern Air Lines, Inc., 373 F.2d 227, 240 n. 12 (2d Cir.), cert. denied, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967). "Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77, 87-88, 101 S.Ct. 1571, 1578-79, 67 L.Ed.2d 750 (1981). "Contribution rests upon a finding of concurrent fault." Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 115, 94 S.Ct. 2174, 2179, 40 L.Ed.2d 694 (1974). Where, as here, a third-party plaintiff insists that it is not at fault, it cannot contend successfully that the third-party defendant is a joint tortfeasor. Southern Surety Co. v. Commercial Casualty Ins. Co., 31 F.2d 817, 819 (3d Cir.), cert. denied, 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 628 (1929); 18 Am.Jur.2d Contribution Secs. 121, 127; 18 C.J.S. Contribution Sec. 3.
 
 
 12
 Assuming that appellants would abandon their "no-fault" stance if their third-party action were tried, they nonetheless could not recover contribution from the Government. The Court in Feres, supra, 340 U.S. at 141-42, 71 S.Ct. at 157, held that the effect of the Tort Claims Act was "to waive immunity from recognized causes of action" but that "no American law ... ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving." In effect, the Court thus was holding that there was no judicially established standard of care against which the alleged negligence of a serviceman's superior officers could be measured. See Laird v. Nelms, 406 U.S. 797, 800-01, 92 S.Ct. 1899, 1901, 32 L.Ed.2d 499 (1972); Donham v. United States, 536 F.2d 765, 774-75 (8th Cir.1976), aff'd sub nom. Stencel Aero Engineering Corp. v. United States, supra, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665.
 
 
 13
 Even if New York law held a private person liable, that fact would not be dispositive of the question of the United States' liability in this case, because the language of Sec. 1346(b), the jurisdictional provision, does not expand the limited waiver set forth in Secs. 2674 et seq. Rather, Sec. 1346(b) is expressly made "[s]ubject to the provisions of" Secs. 2671-2680, and the liability that a state would impose on a private individual may not, under Sec. 2674, be imposed on the government except in "like circumstances." The "like circumstances" language in Sec. 2674 means that "the liability assumed by the Government ... is that created by 'all the circumstances,' not that which a few of the circumstances might create." Feres v. United States, 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950). Thus, notwithstanding any circumstances in which state law would hold a private person liable for his acts, if those circumstances are in any material respect not "like" those in which the government's act occurred, there has been no FTCA waiver of sovereign immunity.
 
 
 14
 Caban v. United States, 728 F.2d 68, 73-74 (2d Cir.1984); see Arvanis v. Noslo Engineering Consultants, Inc., 739 F.2d 1287, 1292 (7th Cir.1984), cert. denied, 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985).
 
 
 15
 Feres created a bar against recovery that was substantive, not procedural, Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 197 n. 8, 103 S.Ct. 1033, 1038 n. 8, 74 L.Ed.2d 911 (1983), and has been held in some cases to go to the very jurisdiction of the court, Labash v. United States Department of the Army, 668 F.2d 1153, 1154-55 (10th Cir.) (citing United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)), cert. denied, 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). It precludes appellants from recovering the contribution they seek. See Hillier v. Southern Towing Co., 714 F.2d 714, 721-22 (7th Cir.1983); Carter v. City of Cheyenne, 649 F.2d 827, 828-30 (10th Cir.1981); Certain Underwriters at Lloyd's v. United States, 511 F.2d 159, 163 (5th Cir.1975); Newport Air Park, Inc. v. United States, 419 F.2d 342, 346-47 (1st Cir.1969); Maddux v. Cox, 382 F.2d 119, 124 (8th Cir.1967).
 
 
 16
 The result would be the same if appellants sought indemnity on a tort theory of active-passive negligence or primary-secondary liability. If the district court is precluded from second-guessing the wisdom and propriety of the discretionary military and political decisions at issue herein, it hardly is in a position to decide whether the Government was guilty of active or passive negligence. Moreover, a finding of either primary or secondary liability is inappropriate when established law says that there can be no finding of liability at all. "For the United States to be the active wrongdoer, however, it must first be a wrongdoer." Hillier v. Southern Towing Co., supra, 714 F.2d at 721 (citing Slattery v. Marra Bros., Inc., 186 F.2d 134, 139 (2d Cir.) (L. Hand, C.J.), cert. denied, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951)).
 
 
 17
 Appellants seek to avoid the preclusive effect of Stencel by arguing that the governmental wrongdoing upon which they base their claim to indemnity was directed against them rather than against the servicemen, and that, therefore, it is irrelevant whether the servicemen have a right of recovery against the Government. Their contention, in substance, is that the Government compelled them to manufacture Agent Orange in accordance with government specifications while suppressing information concerning Agent Orange's hazardous nature known only to the Government. Bearing in mind the burden imposed upon appellants by the Government's motion for summary judgment, see Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), we find neither factual nor legal basis for this contention.
 
 
 18
 Our review of the record places us in complete accord with Chief Judge Weinstein's findings that "[t]he government and [appellants] had essentially the same knowledge about possible dangers from dioxin in Agent Orange" and that "[appellants'] position that they were unaware of the possible dangers of Agent Orange and were misled to their detriment by the government's failure to reveal what it knew in the mid-1960's has no basis in fact." 611 F.Supp. at 1223. In view of the "years of discovery" that preceded the dismissal of appellants' third-party claims, 611 F.Supp. 1223, 1260, it is inconceivable that appellants would not have uncovered and disclosed to the district court any governmental knowledge of hazardous effects that might have precluded such dismissal. Instead of coming forward with factual support for the theory they now espouse, appellants have argued from the outset that there is no medical causal relation between Agent Orange and plaintiffs' injuries. Although appellants are permitted some inconsistency in their pleadings, Fed.R.Civ.P. 8(e)(2), when those pleadings are put to the test by a motion for summary judgment, appellants must, after adequate time for discovery, "make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Celotex, supra, 106 S.Ct. at 2553. On the present record, appellants have not shown any knowledge on the part of the Government, exclusive or otherwise, that Agent Orange was a competent producing cause of the plaintiffs' injuries.
 
 
 19
 Assuming for the argument only that there is sufficient substance in appellants' above-described contention to permit their third-party action to go to trial, the very proof that would be necessary to support that contention on trial would also establish appellants' right to a government contract defense. That defense, which also is discussed in detail in 818 F.2d 187 filed herewith, provides in substance that a manufacturer who, in time of war, supplies materials to the Army in accordance with government specifications, is not liable for injuries resulting from a defect in the specifications. Accordingly, the same facts that, in appellants' view, would warrant their recovery against the Government, would preclude a recovery by the plaintiffs against appellants. The district judge could not properly announce inconsistent findings of fact and conclusions of law on this issue in order to make the government contract defense inapplicable. 89 C.J.S. Trial Sec. 636. If appellants have a valid claim against the Government, there can be no liability on their part, potential or actual, against which the Government should be required to indemnify them. See The Toledo, 122 F.2d 255 (2d Cir.), cert. denied, 314 U.S. 689, 62 S.Ct. 302, 86 L.Ed. 551 (1941); Tankrederiet Gefion A/S v. Hyman-Michaels Co., 406 F.2d 1039, 1042 (6th Cir.1969); Trojcak v. Wrynn, 45 A.D.2d 770, 357 N.Y.S.2d 32 (1974) (mem.) (citing Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 218, 67 N.E. 439 (1903)).
 
 
 20
 We find no merit in appellants' contention that the protection against liability provided by Feres and Stencel applies only to the Government and not to its officials, Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); Rotko v. Abrams, 338 F.Supp. 46 (D.Conn.1971), aff'd on opinion below, 455 F.2d 992 (2d Cir.1972); Hefley v. Textron, Inc., 713 F.2d 1487, 1491 (10th Cir.1983), or that it does not apply to claims of constitutional infringement, Trerice v. Pedersen, 769 F.2d 1398, 1400-01 (9th Cir.1985). We also find no merit in the contention of appellant, Thompson Chemical Corporation, that the district court erred in not specifically considering its claim of a contractual right of reimbursement. The provision giving rise to this claim was contained in a contract providing for participation by Thompson in the proposed modification of a government-owned facility at Weldon Spring, Missouri, which would have enabled that facility to produce Agent Orange. Because no Agent Orange ever was produced at the Welden Spring plant, there were no Agent Orange deaths or injuries "arising out of the performance of this contract" which would bring the contractual indemnification clause into play. This being so, we need not respond to the Government's contention that the proper tribunal to hear Thompson's contract claim was the Court of Claims. See Hefley, supra, 713 F.2d at 1492; 28 U.S.C. Secs. 1346(a)(2) and 1491.
 
 
 21
 Dismissal of appellants' third-party claims against the Government was proper. The order and judgment of dismissal are affirmed.